IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : Crim. No. 1:18-118
:
:
**v.** :
:
:
**DEANGELO LETTERLOUGH** : Judge Sylvia H. Rambo

### M E M O R A N D U M

Presently before the court is Defendant DeAngelo Letterlough's ("Defendant") motion to suppress evidence resulting from an allegedly illegal stop of Defendant's vehicle. Specifically, Defendant argues that the stop was in violation of his Fourth Amendment right to freedom from unreasonable searches and seizures because the officer who conducted the search lacked sufficient probable cause to justify the search. For the reasons that follow, Defendant's motion will be denied.

**I.   Background**

On April 4, 2018, Defendant was charged via indictment with three offenses: (1) possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841 (a)(l); (2) felon in possession of a firearm, in violation of 18 U.S.C. §922(g); and (3) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). Defendant pleaded not guilty to all charges on April 10, 2018. On June 29, 2018, Defendant filed the instant motion

to suppress, and an evidentiary hearing thereon was held on August 29, 2018. At the evidentiary hearing, two witnesses were presented: Officer Chad McGowan, the officer who conducted the allegedly illegal search, and Defendant. The court gleans the following facts relating to the complained-of search and seizure from the testimony presented at the August 29, 2018 hearing.

On November 21, 2017, Officer McGowan, a member of the Harrisburg City Police Department ("HPD"), was participating in a joint investigation in the city of Harrisburg with the Pennsylvania Attorney General Office's Bureau of Narcotics, the Dauphin County Sheriff's Office, and the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). The investigation team was executing an arrest warrant on an individual suspected of drug trafficking. That same day, Defendant happened to be driving down the street where the investigation team was conducting surveillance and pulled his car to the side of the road to speak with an old friend that he saw walking down the street. Unfortunately, the "old friend" happened to be the subject of the investigation. After a brief conversation, Defendant pulled back onto the street and drove away, mere seconds before officers arrested the suspect. A sergeant with the HPD followed Defendant, but did not initiate a traffic stop. Defendant testified that he actually witnessed the arrest in his rear-view mirror, but was unconcerned because he had committed no crimes and was unaware of the suspect's alleged criminal activity. Defendant

2

drove to the end of the street, turned right, and then turned right again to drive down South 13th Street in Harrisburg.

At the same time, Officer McGowan was performing surveillance from a location down the street from where Defendant and the suspect were conversing. He witnessed Defendant's car pull over to the side of the road and saw the suspect approach the vehicle and speak to the driver. Officer McGowan testified that other officers via radio identified Defendant—albeit incorrectly—as a known affiliate of the suspect. After witnessing Defendant's car pull away and turn right, Officer McGowan turned around and drove down a parallel street in order to attempt to head off Defendant on South 13th Street. Of note, Officer McGowan testified that Defendant left the parking space without signaling, although Defendant testified that he did signal before entering traffic. After identifying Defendant's vehicle travelling in the opposite direction on South 13th Street, Officer McGowan pulled, head-on, in front of Defendant's vehicle.

After initiating the traffic stop, Officer McGowan approached the driver's side door of the vehicle on foot, indicating to Defendant to lower his window. Officer McGowan quickly discovered that Defendant was not the individual that the officers had previously identified, but noted the odor of fresh marijuana emanating from inside the vehicle. Based on this odor, Officer McGowan asked Defendant to identify himself. Although Officer McGowan could not recall

3

specifically how he asked Defendant to identify himself, he believed that he requested Defendant's driver's license. In any event, Defendant did not produce a valid form of identification, nor could he because he did not have a valid license at the time of the traffic stop. When Defendant failed to identify himself, Officer McGowan instructed him to exit the vehicle. Defendant refused to do so and repeatedly asked Officer McGowan why he was being stopped. Officer McGowan did not give a reason for the stop, but noticed that Defendant was "acting nervous" and presented stiff and rigid body movements while "patting down" his own pockets as he was seated in the vehicle. Defendant testified that he was nervous because he could not immediately identify Officer McGowan as a police officer and was fearful when an unmarked SUV pulled in front of him. Although Officer McGowan was in full uniform at the time, it is unclear if he activated his lights and sirens prior to initiating the traffic stop.

When Defendant continued to refuse to exit the vehicle or identify himself, Officer McGowan and a sergeant who had been following Defendant forcibly removed him from the vehicle. Officer McGowan described Defendant as "noncompliant," and the two police officers forced Defendant onto the ground. After placing Defendant on the ground, Officer McGowan observed that Defendant was "favoring" his right side, pressing his right hip pocket into the ground. Based on his experience and training, Officer McGowan believed this action to be an

attempt to hide contraband that the Defendant may have been holding in his right pocket. In fact, the officers discovered that Defendant had a pistol clip and a 9mm pistol in a holster on his right side. Additionally, during the altercation, a digital scale fell from Defendant's person, which was later discovered to have a residue of cocaine. Officers performed a search of Defendant's pockets and discovered, *inter alia*, sandwich baggies filled with marijuana. At this point, the officers placed Defendant under arrest. Officer McGowan issued Defendant a traffic citation pursuant to 75 Pa. Code § 3334 for pulling out of a parking space without signaling. Defendant argues now that Officer McGowan had no basis to stop, search, and, eventually, arrest Defendant because he did not witness Defendant commit any traffic violations that would have justified the initial traffic stop.

## II. Discussion

The Fourth Amendment protects citizens from unreasonable searches and seizures" of their "persons, houses, papers, and effects." U.S. Const. Amend. IV; *Katz v. United States*, 389 U.S. 347, 360 (1967). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). The

Third Circuit has explained the permissive standard under which an officer may stop and search a vehicle when the officer has a reasonable suspicion of a traffic violation:

> When one peruses the traffic-stop suppression caselaw, one is struck by how rarely a traffic stop is found to have been illegal. In *Whren v. United States*, 517 U.S. 806 [] (1996), the Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime. And once a car has been legally stopped, the police may "escalate" the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants. . . . Courts give considerable deference to police officers' determinations of reasonable suspicion . . . and the cases are steadily increasing the constitutional latitude of the police to pull over vehicles.

*United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (internal citation omitted); *see also United States v. Smith*, No. 18-cr-93, 2018 WL 4207152, *2 (E.D. Pa. Sept. 4, 2018) ("Therefore, Officer['s] stop—even if based on the ulterior motive of finding a suspected shooter—was reasonable under the Fourth Amendment."). Cognizant of this standard, the court need not address whether the officers' mistaken identification of Defendant as a known associate of the drug-trafficking suspect justified their pursuit and detention of Defendant. The court's initial inquiry is simply whether Officer McGowan had probable cause to believe a traffic violation occurred. If Officer McGowan's testimony is credible, and this court finds that it is, he witnessed an obvious violation of the Pennsylvania Vehicle Code. Plainly stated, the Code requires a driver to signal before leaving a parking

space, and Officer McGowan saw Defendant pull out of a parking space without signaling. The court finds Officer McGowan's testimony to be credible despite Defendant's assertions that he did signal before pulling out.[1] *See United States v. Leveto*, 343 F. Supp.2d 434, 442 (W.D. Pa. 2004) ("It is settled that at a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." (quotations and citations omitted)). Accordingly, Officer McGowan had probable cause to initiate a traffic stop of Defendant's vehicle.

Applying the standard set forth in *Mosley*, the officers had probable cause to search the vehicle after Officer McGowan detected the odor of marijuana. *See Mosley*, 454 F.3d at 252 (citing *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) ("After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its

---

[1] Specifically, the court finds Officer McGowan's statement credible because he was more keenly aware of Defendant's actions at the time of the traffic violation. Officer McGowan had witnessed Defendant pull to the side of the road during an active operation to apprehend a suspected drug trafficker and have a substantial conversation with the suspect. It can be expected that, under this heightened degree of scrutiny, Officer McGowan would have noticed whether Defendant committed a traffic infraction and may have been actively searching for a violation to justify stopping Defendant for further questioning. *See Mosley*, 454 F.3d at 252. Defendant, in contrast, testified that he, via his rear view mirror, watched his friend be chased by undercover officers and arrested in the middle of the street at the same time he was pulling out of the parking space. Accordingly, Defendant's certainty that he did signal is somewhat dubious.

7

occupants for further investigation.")). Detecting the particularized odor of marijuana has repeatedly been held to be sufficient to establish probable cause to conduct a search. *See United States v. Simmons*, No. 06-cv-3902, 2007 WL 3122169, *3 (3d Cir. 2007) (holding that the odor of marijuana emanating from a vehicle alone provided probable cause for the search of a vehicle) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)). After escalating the initial traffic stop based on probable cause of a drug-related offense, Officer McGowan experienced substantial justification for asking Defendant to exit the vehicle and for forcibly removing Defendant from the vehicle when he failed to comply. Given that Defendant had recently been seen associating with a suspected drug trafficker who was found to be armed and in possession of cocaine, Defendant had refused to identify himself, Defendant was acting erratically and patting himself down in a suspicious manner, and Officer McGowan had detected the presence of illegal drugs emanating from Defendant's vehicle, it was appropriate for the officers to remove Defendant from his vehicle and perform a pat down in order to ensure the safety of the officers. *See United States v. Almestica*, 487 F. App'x 764, 766 (3d Cir. 2012) (finding probable cause to forcibly remove suspect from vehicle where suspect was known to have prior violent offenses, was seen throwing an unknown object into the back seat of the car, and was behaving in a belligerent manner) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*)

(holding that, once vehicle was lawfully detained, officer may order driver to step out of vehicle and, if officer reasonably concludes driver might be armed and presently dangerous, may then conduct pat-down). Therefore, at each phase of the interaction between Officer McGowan and Defendant, the stop, search, seizure, and arrest that took place were justified and did not run afoul of the Fourth Amendment.

### III. Conclusion

For the reasons set forth above, the traffic stop and subsequent search performed by Officer McGowan did not violate the Fourth Amendment protection against unreasonable searches and seizures. Accordingly, Defendant's motion to suppress will be denied. An appropriate order follows.

    s/Sylvia H. Rambo
    SYLVIA H. RAMBO
    United States District Judge

Dated: October 23, 2018